Jill L. Ryther      SBN 266016
Jessica L. Cohen  SBN 274256
LAW OFFICE OF JILL L. RYTHER
6911 Topanga Canyon Blvd., Suite #300
Canoga Park, CA 91303
Ph: 818-347-4127 Fx: 818-347-4128

*Attorneys for Plaintiff*
PETER YOUNG

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

PETER YOUNG, an individual.

                Plaintiff,

   vs.

HANNA ISRAEL, an individual;
FAITH GUNDRAN, an individual;
LAURA LUNGARELLI, an individual;
ADAM WEISSMAN, an individual;
and DOES 1-30, Inclusive,

                Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**CASE NO. CV11-01985 DMG (SHx)**

*Assigned to the Honorable Dolly M. Gee*

**PLAINTIFF PETER YOUNG'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE**

**DECLARATIONS OF PETER YOUNG; MATT BRUCE; KATE LUNGER; LAUREN REGAN; AND JORDAN JONES**

Date: June 20, 2011
Time: 9:30 a.m.
Dept.: Courtroom 7, 2nd Floor

1  <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2  **I.      INTRODUCTION.**

3          As alleged in plaintiff Peter Young's Complaint, this is a case about three

4  private citizens defaming another private citizen and accusing plaintiff of some of

5  the most reprehensible crimes in modern society.  Defendants Hanna Israel

6  ("Israel"), Laura Lungarelli ("Lungarelli") (collectively "Defendants"), and Adam

7  Weissman ("Weissman") made and disseminated many false statements about

8  plaintiff to many different persons through many different means of communication.

9  Defendants did not merely make one uninformed statement about plaintiff; they

10  engaged in an aggressive and comprehensive campaign to destroy plaintiff's

11  reputation.

12          Now, Defendants have filed a Special Motion to Strike plaintiff's Complaint

13  on the ground that the Complaint is a "strategic lawsuit against public participation,"

14  or "SLAPP" suit intended to chill Defendants' ability to exercise their constitutional

15  free speech rights.  (Memorandum, p. 1.)  Code of Civil Procedure § 425.16(b)(1)

16  states,

17              "A cause of action against a person arising from any act
18              of that person in furtherance of the person's right of petition
                or free speech under the United States Constitution or the
19              California Constitution in connection with a public issue
                shall be subject to a special motion to strike, unless the court
20              determines that the plaintiff has established that there is a
21              probability that the plaintiff will prevail on the claim."

22

23          Therefore, in order to prevail on this motion Defendants must first show that

24  (1) the causes of action in plaintiff's Complaint arise from Defendants' exercise of

25  their right of petition or free speech in connection with a public issue, and (2)

26  plaintiff must not be able to show a probability of prevailing on the causes of action

27  in the Complaint.  Defendants' motion fails under both prongs of analysis.  First,

28  Defendants' cannot show that the statements alleged in plaintiff's Complaint were

1   made in furtherance of Defendants' free speech rights because plaintiff is not a
2   public figure as Defendants mistakenly contend, and Defendants' statements were
3   not made regarding a public issue.  Second, plaintiff can meet his minimal burden of
4   presenting evidence showing a probability that he will ultimately prevail on his
5   claims.

6          Furthermore, because Defendants' motion is frivolous and was solely
7   intended to cause unnecessary delay, plaintiff is entitled to recover attorney's fees
8   pursuant to Code of Civil Procedure section 425.16(c)(1).

9   **II.    FACTUAL BACKGROUND.**

10         This is a case about plaintiff's relationship with Israel and how after that
11  relationship deteriorated Israel began spreading offensive and false accusations
12  about plaintiff with Lungarelli and Weissman's help.  Plaintiff and Israel met in
13  Santa Cruz in February, 2008.  (Young Decl. ¶ 2.)  They maintained a relationship
14  and plaintiff invited Israel on a cross-country trip in the summer of 2009.  (*Id*. at ¶
15  3.)  The purpose of the trip was to collect footage for a documentary film and
16  plaintiff asked Israel to help him drive, operate the camera, and navigate on the trip.
17  (*Id*. at ¶¶ 3-4.)  Conflict between plaintiff and Israel emerged early in the trip when
18  Israel refused to perform any of the tasks for which she was enlisted.  (*Id*. at ¶ 5.)
19  Plaintiff repeatedly told Israel it might be best if she left the trip but Israel insisted
20  on staying and stated that she would start being more helpful.  (*Id*. at ¶¶ 6-8.)

21         At one point during the trip Israel told plaintiff she was feeling ill outside
22  Pullman, Washington.  (*Id*. at ¶ 8.)  Plaintiff asked Israel if she wanted to stay in the
23  car while plaintiff walked to the filming site.  (*Ibid*.)  Israel willingly agreed to walk
24  a short distance to the filming site.  (*Ibid*.)  Plaintiff did not coerce or force Israel to
25  walk with him by any means.  (*Id*. at ¶¶ 9-11.)

26         To help fund the trip and filming, plaintiff was given an allowance by a
27  filmmaker and magazine editor which allowed plaintiff approximately ten dollars
28

per day for food.  (*Id.* at ¶ 15.)  Israel, who regularly boasted about having a lot of money, told plaintiff that she would willingly contribute to the funding of the trip. (*Id.* at ¶¶ 13-15.)  Although plaintiff agreed to share half of his ten dollar daily food allowance with Israel, both plaintiff and Israel routinely bought additional food with their own money.  (*Id.* at ¶ 17.)  Plaintiff and Israel also had extra food in the trunk of their car at all times during the trip.  (*Id.* at ¶ 18.)  Between her money and the food in the car, Israel was never without access to food during the trip.

Although Israel had agreed to contribute funds to the trip, when plaintiff asked Israel to make a temporary loan to the trip fund in Des Moines, Iowa, Israel refused to do so.  (*Id.* at ¶  19.)  Israel admitted that she had money; she just believed plaintiff should pay for the trip.  (*Ibid.*)  After this disagreement plaintiff asked Israel to buy a plane ticket home and Israel did so but pleaded with plaintiff to remain on the trip.  (*Id.* at ¶ 20.)  At no point during the trip did Israel ever ask to leave.  (*Id.* at ¶ 21.)

Shortly after the disagreement about funding, plaintiff and Israel got into an argument on August 26, 2009 after plaintiff made a comment about Israel's outfit that Israel did not appreciate.  (*Id.* at ¶ 23.)  Israel threw car keys at plaintiff and threw personal objects out of the car.  (*Ibid.*)  Plaintiff then dropped Israel off at an airport in Minneapolis, Minnesota.  (*Ibid.*)

The way the trip ended evidently did not sit well with Israel.  After the trip concluded, Israel, Lungarelli, and Weissman engaged in a comprehensive, aggressive campaign to defame plaintiff.  Plaintiff learned of the many false accusations being made against him personally and through friends.  Although all of the accusations and sources are too numerous to list within the space constraints of this memorandum, select examples from Defendants' campaign to defame plaintiff are instructive.

In December, 2009 Israel told Jordan Jones ("Jones") that she intended to

publish accusations about plaintiff in an attempt to ruin plaintiff's reputation.  (Jones Decl. ¶¶ 2-3.)  It was Israel's goal to have plaintiff blacklisted from the animal rights communities throughout the country.  (*Id*. at ¶ 5.)  Similarly, on January 7, 2010 Matt Bruce ("Bruce") met with Israel and spoke about her experiences with plaintiff for approximately four hours.  (Bruce Decl. ¶ 2.)  Israel told Bruce that she intended to publish accusations against plaintiff.  (*Id*. at ¶ 3.)

In furtherance of her plan to destroy plaintiff's reputation, Israel told Jones that plaintiff had starved her for weeks and that she had lost 20 pounds as a result.  (Jones Decl. ¶ 6.)  When Israel made a similar accusation against plaintiff to Bruce, she claimed to have lost 25 pounds.  (Bruce Decl. ¶ 4.)  Israel also told Jones that plaintiff had physically abused her and that she asked plaintiff to take her to the hospital but plaintiff refused.  (Jones Decl. ¶¶ 7, 10.)  When Israel told the story to Bruce, she claimed that she almost died because plaintiff would not take her to the hospital.  (Bruce Decl. ¶ 10.)

Worst of all, Israel also told Jones that plaintiff has sexually abused her.  (Jones Decl. at ¶ 12.)  In addition, Israel wrote an email to Lauren Regan on August 9, 2010 stating that plaintiff "had multiple accusations of sexual assault against him."  (Regan Decl. ¶¶ 2-3, Exh. A.)

Israel's accusations of plaintiff's purportedly reprehensible behavior were not confined to conversations and emails.  In July, 2010 Israel, Lungarelli, and Weissman conspired to disseminate a flyer to hundreds of people tarnishing plaintiff's reputation.  On July 19, 2010 Kate Lunger ("Lunger") was attending the 2010 Animal Rights Conference in Alexandria, Virginia.  (Lunger Decl. ¶ 2.)  Lunger was handed a flyer by a man she later identified as Weissman.  (Lunger Decl. ¶¶ 4-5.)  A copy of the flyer is attached as Exhibit A to Lunger's declaration.  (Lunger Decl. Exh. A.)  The flyer purported to be a "Community Alert" and contained plaintiff's photo.  (*Ibid*.)  Below plaintiff's photo the flyer stated among

1  other things that,

> "There are reports from multiple people that Peter Young has sexually assaulted women and engaged in coercion, manipulation and emotional abuse.  One individual who has gone public about her abuse was subject to harassment and threats and falsely labeled an informant by him."  (*Ibid*.)

After she received the flyer, Lunger watched Weissman hand the flyer out to hundreds of people.  (Lunger Decl. ¶ 10.)

Plaintiff discovered many of the accusations being made against him first hand.  After running a Google search of his name, plaintiff discovered a website containing an email written by Israel stating that many women plaintiff had been intimate with experienced verbal, emotional, or sexual abuse by plaintiff.  (Young Decl. ¶¶ 26-27, Exh. B.)  Israel accused plaintiff of forcing his former partner to "engage in unwanted sexual activity."  (*Ibid*.)  In a different email Israel accused plaintiff of subjecting her to emotional abuse, threatening to abandon her, and putting her sexual health and safety at risk.  (*Id*. at ¶ 31, Exh. E.)  Another website stated that "There are reports from multiple people that animal rights activist Peter Young engaged in coercion, manipulation, and emotional abuse of women."  (*Id*. at ¶ 39, Exh. I.)  An email written by Lungarelli indicated that Lungarelli had informed a third party that many women have had negative experiences with plaintiff but were afraid to come forward.  (*Id*. at ¶ 30, Exh. D.)

In addition to the accusations plaintiff discovered online, plaintiff was handed the same flyer that Lunger was given by Weissman at the 2010 Animal Rights Conference.  (*Id*. at ¶ 33, Exh. F.)  When plaintiff confronted Weissman about the flyer, Weissman admitted that he was passing out the flyer at Israel's request and that Lungarelli said she knew of multiple women plaintiff had raped.  (*Id*. at ¶ 34.)  The text of the flyer even made it onto You Tube and plaintiff's Wikipedia page.  (*Id*. at ¶¶ 37-38, Exh. H.)

The public and private accusations against plaintiff, effectively accusing plaintiff of raping multiple women and torturing Israel, are false.  Furthermore, Defendants knew the accusations were false as they were making them.

Plaintiff has never starved a woman, physically attacked a woman, sexually abused a woman, or raped a woman.  (*Id*. ¶¶ 41-44.)  Israel has admitted that although she accused plaintiff of starving her, she had food in the car for the duration of the trip and that she had been given $10,000 by her father before the trip.  (Jones Decl. ¶¶ 8-9.)  Israel admitted to Bruce that she had food in the trunk of the car, bought her own dinner on the last day of the trip and that she was using her debit card while she claimed that plaintiff was starving her.  (Bruce Decl. ¶¶ 5-7.)  With regards to plaintiff's purported refusal to take Israel to the hospital, Israel later admitted to Jones and Bruce that she had lied about plaintiff refusing to take her to the hospital.  (Jones Decl. at ¶ 11, Bruce Decl. ¶¶ 11-12.)

Although Israel told Jones that plaintiff had sexually abused her and stated that plaintiff had sexually assaulted multiple women on the widely distributed flyer, she told Bruce that plaintiff had never done anything that was sexually inappropriate.  (Bruce Decl. ¶ 13.)  Israel also admitted that plaintiff had not been sexually improper in an email she sent to plaintiff.  (Young Decl. ¶ 49, Exh. J.)  Israel even apologized to plaintiff for spreading false rumors about him.  (Young Decl. ¶ 47.)

As a result of the false statements being circulated about him, plaintiff has suffered monetary and personal harm.  The number of speaking invitations plaintiff has received has declined substantially.  (*Id*. at ¶ 54.)  Plaintiff is frequently confronted and called a rapist and an abuser.  (*Id*. at ¶ 55.)  Plaintiff has lost many friends and his romantic life has suffered.  (*Ibid*.)  The destruction of his reputation has left plaintiff in a state of deep depression.  (*Ibid*.)

III.   **PLAINTIFF'S COMPLAINT CANNOT PROPERLY BE STRICKEN AS A SLAPP SUIT BECAUSE DEFENDANTS' STATEMENTS WERE NOT MADE IN FURTHERANCE OF THEIR FREE SPEECH RIGHTS AND PLAINTNIFF CAN ESTABLISH A PROBABILITY OF PREVAILING ON THIS CLAIM.**

Code of Civil Procedure § 425.16(b)(1) states,

> "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

Therefore, in order to prevail on this motion Defendants must first show that (1) the causes of action in plaintiff's Complaint arise from Defendants' exercise of their right of petition or free speech in connection with a public issue, and (2) plaintiff must not be able to show a probability of prevailing on his causes of action. Defendants' motion fails under both prongs of analysis.  Each prong is discussed individually below.

A.   **Defendants' Motion Fails Because the Causes of Action in Plaintiff's Complaint Did Not Arise from Defendants' Exercise of their Right of Petition or Free Speech in Connection with a Public Issue.**

Before plaintiff or the Court even address the second prong in the section 425.16(b)(1) analysis, Defendants concede that they have the burden of showing that plaintiff's suit arose from an act in furtherance of Defendants' right of petition or free speech.  (Memorandum, p. 7; *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal. 4th 53, 67 (quoting Code Civ. Proc. § 425.16(e).)  Based on the allegations in plaintiff's Complaint and the applicable case law, Defendants cannot

meet their burden and their motion must be denied for that reason alone.

As used in section 425.16(e),

> "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Defendants do not argue that the defamatory statements they made fall under the first or second subdivisions. Defendants' sole contention appears to be that their statements were made in a public forum in connection with a public interest and fall under the third subdivision. (Memorandum, pp. 7-11.) Defendants believe that they "easily satisfy their burden" because plaintiff is a public figure, and the statements were made about domestic violence—a topic of public interest. (*Id*. at p. 7.) As explained below, both of Defendants' arguments are incorrect.

### 1. Defendants' Statements Were Not Made in Connection with an Issue of Public Interest Because Plaintiff is not a Public Figure.

Defendants first argue that the alleged statements about plaintiff are an issue of public interest since the statements concern plaintiff and plaintiff is a public figure. (Memorandum, p. 8.) Defendants' assertion is based on an oversimplified view of cited case law and ignorance of relevant case law.

"A public figure is a person who has assumed a role of special prominence in the affairs of society, who occupies a position of persuasive power and influence, or who has thrust himself to the forefront of a particular public controversy in order to influence the resolution of the issues involved." (*Weinberg v. Feisel* (2003) 110 Cal. App. 4th 1122, 1131.)

"The characterization of 'public figure' falls into two categories: the all-purpose public figure, and the limited purpose or 'vortex' public figure. The all-purpose public figure is one who has achieved such pervasive fame or notoriety that he or she becomes a public figure for all purposes and contexts.  The limited purpose public figure is an individual who voluntarily injects him or herself or is drawn into a specific public controversy, thereby becoming a public figure on a limited range of issues." (*Gertz v. Robert Welch, Inc.* (1974) 418 U.S. 323, 351.)

Defendants do not argue that plaintiff has achieved such pervasive fame or notoriety that he is a public figure for all purposes and contexts.  Instead, Defendants argue that plaintiff is a limited purpose public figure because he is a well known leader within the animal rights community, has appeared in animal rights films, and speaks at animal rights conferences.  (Memorandum, p. 21.)  Defendants' analysis glosses over key nuances and distinctions that must be brought to light.

There are three elements that must be present in order to characterize a plaintiff as limited purpose public figure.

> "First, there must be a public controversy, which means the issue was debated publicly and had foreseeable and substantial ramifications for nonparticipants. Second, the plaintiff must have undertaken some voluntary act through which he or she sought to influence resolution of the public issue. In this regard it is sufficient that the plaintiff attempts to thrust him or herself into the public eye. And finally, the alleged defamation must be germane to the plaintiff's participation in the controversy." (*Copp v. Paxton* (1996) 45 Cal.App.4th 829, 845–846.)

1    Plaintiff is not a limited purpose public figure for the purposes of this case

2   because of the final requirement outlined in *Copp*.  The alleged defamation in this

3   case is not germane to plaintiff's participation in a public controversy.  Even

4   assuming that plaintiff voluntarily injected himself into the animal rights community

5   and various animal rights issues, the allegedly defamatory statements made by

6   Defendants have no connection to the animal rights community or animal rights

7   issues.  As alleged in plaintiff's Complaint, Defendants accused plaintiff of sexually

8   assaulting multiple women, abusing women, and nearly starving Israel to death.

9   (Complaint ¶¶ 10a-17d.)  None of the alleged statements have even the most

10   tenuous connection to animal rights issues, the issues on which plaintiff arguably

11   has thrust himself into the public eye.  An examination of similar cases is

12   illustrative.

13    *Gilbert v. Sykes* (2007) 147 Cal App. 4th 13, 18, 21 involved a prominent

14   plastic surgeon alleging defamation against a patient who created a website stating

15   that the surgeon had performed procedures that the patient did not need or want.

16   The surgeon filed a cross-complaint and the patient filed a special motion to strike.

17   The Court of Appeal concluded that the surgeon was a limited purpose public figure

18   in the case's narrow context, relying on the logic that, "Once [an individual] places

19   himself in the spotlight on a topic of public interest, [the individual's] private words

20   and conduct relating to that topic become fair game."  (*Id*. at p. 25.)

21    More specifically, the Court noted that the plastic surgeon had, "thrust

22   himself into that debate by appearing on local television shows as well as writing

23   numerous articles in medical journals and beauty magazines, touting the virtues of

24   cosmetic and reconstructive surgery."  (*Ibid*.)  Therefore, "statements alleging that

25   his surgical procedures resulted in disfigurement or required expensive multiple

26   corrective surgeries are entitled to constitutional protection."  (*Id*. at p. 26.)  The

27   surgeon was accordingly a limited purpose public figure, "who invited public

28

102542v2

10

1  attention and comments regarding his surgical practice." (*Ibid*.)  The foregoing

2  language establishes that the surgeon was only considered a public figure because

3  the alleged defamation directly pertained to the public debate the surgeon had

4  voluntarily joined.

5      Similarly, in *McGarry v. University of San Diego*, 154 Cal. App. 4th 97, 115

6  the Court of Appeal held that a college football coach was a limited purpose public

7  figure for the purpose of alleged defamatory statements that "dealt exclusively with

8  his performance of the public role he voluntarily undertook."

9      The facts of this case are clearly distinguishable from *Skyes* and *McGarry*.

10  Those cases serve as examples in which the alleged defamatory statements were

11  germane to the public role that the limited purpose public figures voluntarily

12  undertook.  This case is an example of a situation in which the alleged defamatory

13  statements are not germane to the plaintiff's public role.  In this case plaintiff

14  voluntarily undertook a public role regarding animal rights issues but Defendants'

15  statements pertained to sexual abuse, physical abuse, emotional abuse, and starving

16  a woman to the point of near death.  None of Defendants' statements were directed

17  at plaintiff's role in the animal rights community.  Therefore, the alleged defamation

18  in this case is not germane to plaintiff's participation in the public controversy as

19  required by *Copp,* supra 45 Cal. App. 4th at 845–846.  The Court must accordingly

20  conclude that plaintiff is not a limited purpose public figure and that Defendants

21  have not made a prima facie showing that their allegedly defamatory statements

22  were made in connection with an issue of public interest.

23      **2.    Defendants' Statements Were Not Made in Connection with**

24      **an Issue of Public Interest Because the Statements are not**

25      **About Domestic Violence.**

26      Defendants' briefly attempt to argue that the allegedly defamatory statements

27  are also a matter of public interest since they involve protecting women from

28

abusive relationships.  (Memorandum, p. 9.)  Once again, Defendants' argument is without merit.  Defendants cite no authority showing that one private citizen accusing another private citizen of sexual assault in multiple forums to multiple individuals constitutes a discussion on an issue of public interest.  A quick analysis of the two cases cited by Defendants is telling.

Defendants rely on *Sipple v. Foundation for Nat. Progress* (1999) 71 Cal. App. 4th 226 and *Terry v. Davis Community Church* (2005) 131 Cal. App. 4th 1534 to support their vague argument that any statement connected to the issue of domestic violence is a matter of public interest.  Neither case supports Defendants' argument when the facts of this specific case are considered.

*Sipple* involved a public figure who was running media strategy for Bob Dole's presidential campaign, which was based on morality issues.  (*Sipple*, supra 71 Cal. App. 4th at 238.)  The Court of Appeal concluded that the appellant was capitalizing on domestic violence issues to further his career.  (*Ibid*.)  Therefore, when "Mother Jones," a national publication, published an article discussing appellant's custody dispute with his wife, the article was a matter of public interest because of, "The article's theme that rich and powerful men may use the legal system to their advantage over women who may have been abused by them."  (*Id*. at p. 239.)

Defendants' attempts to equate this case with *Sipple* are misplaced.  In this case plaintiff is not a public figure, plaintiff was not capitalizing on domestic violence issues to further his career, and Defendants' statements were not part of a national publication or a larger article with domestic violence as its primary theme. Defendants' pointed accusations that plaintiff sexually assaults women and nearly starved a woman to death are not comparable to a widely publicized article about men using the legal system to their advantage over abused women.

Furthermore, *Terry* involved accusations of child molestation that were

12

referred to the police department for investigation and, "gave rise to an ongoing discussion about protection of children, which warrants protection by a statute that embodies the public policy of encouraging participation in matters of public significance." (*Terry,* supra 131 Cal. App. 4th at 1550.)  It is not clear how the facts of *Terry* connect to the facts of this case, in which the allegedly defamatory statements do not involve accusations of child molestation and were not a part of any ongoing discussion of public significance.  Therefore, *Terry* is just as irrelevant to this case as *Sipple*.

After examining the logic of *Terry* and *Sipple*, it is clear that the facts of this case are distinguishable.  The Court should not be persuaded by Defendants' attempt to portray Defendants' personal, isolated accusations against plaintiff as a part of some noble, national discussion.  Defendants' accusations are no more a part of a larger discussion about domestic violence than one man accusing another of stealing his lunch is a part of a larger discussion about private property rights.  Defendants' argument that their statements concern a matter of public interest is simply without merit.

In light of the foregoing arguments, it is apparent that Defendants have not satisfied their burden of showing that plaintiff's suit arose from an act in furtherance of Defendants' right of petition or free speech.  Defendants had a duty to establish that their statements were made in connection with an issue of public interest.  (Code Civ. Proc. § 425.16(e)(3-4).)  Defendants have failed for two reasons.

First, Defendants have failed because plaintiff is not a limited public figure because the allegedly defamatory statements were not related to plaintiff's role in the animal rights community.  Second, Defendants have failed because their accusations were not a part of a larger narrative or ongoing discussion about domestic violence.  Defendant's arguments to the contrary are not supported by the applicable law.  Because Defendants have not satisfied their burden and cleared the

first hurdle in the section 425.16 analysis, the Court must deny Defendants' special motion to strike.

### B.   Defendants' Motion Fails Because Plaintiff Can Establish a Probability of Prevailing on Each Cause of Action in the Complaint.

As discussed above, Defendants cannot prevail on the first prong of the section 425.16 analysis.  Plaintiff is only addressing the second prong of the section 425.16 analysis out of an abundance of caution.

The second step in the section 425.16 analysis requires the Court to decide whether plaintiff has demonstrated a reasonable probability of success on the merits; that is, whether plaintiff has shown that the causes of action alleged, "are both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if [their] evidence...is credited."  (*Equilon Enterprises, LLC*, supra, 29 Cal. 4th at 67; *Matson v. Dvorak* (1995) 40 Cal. App. 4th 539, 548.)  "Legally sufficient" means that the cause of action would withstand a demurrer.  (*Dowling v. Zimmerman* (2001) 85 Cal. App. 4th 1400, 1421.)  The plaintiff's prima facie showing need only establish that his claims have "minimal merit."  (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal. 4th 260, 291.)  The question is whether plaintiff has presented evidence in opposition to Defendants' motion that, if believed by the trier of fact, would be sufficient to support a judgment in plaintiff's favor.  (*Zamos v. Stroud* (2004) 32 Cal. 4th 958, 965.)  Plaintiff can establish that he has a reasonable probability of success on the merits in this case.

### 1.   Plaintiff's Complaint Properly Pleads the Specific Facts Necessary to State a Cause of Action for Defamation.

To state a cause of action for defamation, the plaintiff must allege facts showing that: 1) the defendant intentionally published a statement of fact; 2) the

statement was false; 3) the statement was defamatory; 4) the statement was unprivileged; and 5) the statement has a natural tendency to injure or causes special damages.  (*Taus v. Loftus* (2007) 40 Cal. 4th 683, 720.)  Defendants argue that that plaintiff has not plead the facts necessary to satisfy the foregoing elements.  An examination of plaintiff's Complaint shows that plaintiff has sufficiently stated a cause of action for defamation.

Plaintiff's Complaint is full of allegations that Defendants intentionally published statements of fact about plaintiff. Plaintiff even included specific language, alleging that Defendants created a website stating that "There are reports from multiple people that animal rights activist Peter Young engaged in coercion, manipulation, and emotional abuse of women." (Complaint ¶ 14(c).)  Defendants also informed women plaintiff has dated that plaintiff is a rapist and is generally dangerous to women.  (*Id*. at ¶¶ 16-17.)  Furthermore, plaintiff has unequivocally alleged that the statements about him are false.  (*Id*. at ¶ 27.)

Plaintiff also alleges that the statements convey a defamatory meaning to their audience, that the statements are not privileged, and that plaintiff has suffered damages as a result of the statements.  (*Id*. at ¶¶ 26-31.)  The foregoing excerpts of the Complaint show that plaintiff has plead the facts necessary to state a cause of action for defamation.

> **2.    Plaintiff Has Submitted Evidence That, if Believed by a Trier of Fact, Would Support a Judgment in Plaintiff's Favor on his Defamation Cause of Action.**

The elements of a defamation cause of action are outlined above and plaintiff has submitted evidence, which if believed by a trier of fact, would satisfy each of the foregoing elements.  First, there is ample evidence that Defendants published statements of fact about plaintiff.

Israel told Jordan Jones and Matt Bruce that she intended to publish

accusations about plaintiff.  (Jones Decl. ¶¶ 2-3, Bruce Decl. ¶ 3.)  Israel then told
Jones and Bruce that plaintiff starved her and that she almost died because plaintiff
refused to take her to the hospital.  (Jones Decl. ¶¶ 6-7, Bruce Decl. ¶¶ 4, 10.)  Israel
also told Jones that plaintiff had sexually abused her and sent an email stating that
plaintiff "had multiple accusations of sexual assault against him."  (Jones Decl. ¶ 12,
Regan Decl. ¶¶ 2-3, Exh. A.)

A flyer containing some of Israel's accusations was distributed to hundreds of
people by Weissman at the 2010 Animal Rights Conference.  (Lunger Decl. ¶¶ 2-5.)
At one point Lungarelli stated that she knew multiple women who had been raped
by plaintiff.  (Young Decl. ¶ 34.)  Furthermore, a publicly accessible website
contained emails written by Defendants stating, among other things, that plaintiff
had forced his former partner to "engage in unwanted sexual activity."  (Young
Decl. ¶¶ 26-27, Exh. B.)  The foregoing evidence shows that many statements of
fact were being made about plaintiff to many different people through many
different means of communication.

Plaintiff has also submitted evidence establishing that the statements made
about him were false.  Plaintiff has never starved a woman, physically attacked a
woman, sexually abused a woman, or raped a woman.  (Young Decl. ¶¶ 41-44.)
Specifically, plaintiff did not starve or abuse Israel, who has admitted that although
she accused plaintiff of starving her, she had food in the car for the duration of the
trip and that she had been given $10,000 by her father before the trip.  (Jones Decl.
¶¶ 8-9, Bruce Decl. ¶¶ 5-7.)  Israel has also admitted that plaintiff never did
anything sexually inappropriate on the trip.  (Bruce Decl. ¶ 13, Young Decl. ¶ 49,
Exh. I.)

With regards to plaintiff's purported refusal to take Israel to the hospital,
Israel never asked to be taken to the hospital.  (Young Decl. ¶ 12.)  Corroborating
plaintiff's assertion, Israel has admitted that she lied about plaintiff refusing to take

1   her to the hospital.  (Jones Decl. at ¶ 11, Bruce Decl. ¶¶ 11-12.)

2       Plaintiff's declaration along with the declarations of persons who spoke to

3   Israel after the trip establish that the accusations against plaintiff are false.  Plaintiff

4   has not committed sexual assault against Israel, let alone against the multiple

5   women Defendants accused plaintiff of assaulting.  Plaintiff did not starve Israel and

6   he never put Israel's health or life at risk.

7       It is beyond question that in addition to being false statements of fact, the

8   statements made by defendants are defamatory, unprivileged and have a natural

9   tendency to injure or cause special damages.  A statement is defamatory if it imputes

10   some negative characteristics to the plaintiff.  (*Polygram Records, Inc. v. Superior*

11   *Court* (1985) 170 Cal. App. 3d 543, 551.)  A defamatory statement is one "which

12   exposes any person to hatred, contempt, ridicule or obloquy, or which causes him to

13   be shunned or avoided, or which has a tendency to injure him in his occupation."

14   (Civil Code § 45.)

15       It is difficult to imagine statements which are more likely to expose a person

16   to hatred and contempt than those made by Defendants about plaintiff.  In this case,

17   the statements accusing plaintiff of sexual assault and nearly starving a woman to

18   death have exposed him to contempt and ridicule from friends and strangers.

19   (Young Decl. ¶¶ 54-55.)  Plaintiff's reputation has been tarnished and his status as a

20   member of the animal rights community has decreased significantly.  (*Ibid*.)  Not

21   only do the statements made by Defendants have a tendency to injure or cause

22   special damages, but in this case the statements actually caused plaintiff tangible

23   harm in the form of monetary loss, a sullied reputation, and deep depression.  (*Ibid*.)

24       Defendants have not made a pointed argument as to why their statements

25   would be privileged.  The closest Defendants come to doing so is contending that

26   their statements were fair comments on a public figure, but as noted above, plaintiff

27   is not a public figure and therefore Defendants' statements are not a fair comment

28

1   on plaintiff's behavior.

2   Taken together, plaintiff has established a high probability of prevailing in

3   this action.  The record is full of factual statements that Defendants made and spread

4   about plaintiff.  The statements are false, as is evidenced by plaintiff's declaration

5   and Israel's admissions to Jones, Bruce, and plaintiff himself.  Lastly, plaintiff has

6   suffered tangible harm as a result of the accusations Defendants circulated about

7   him.  Plaintiff has presented sufficient evidence that, if believed by a trier of fact,

8   would support a judgment in plaintiff's favor on plaintiff's defamation cause of

9   action.  Therefore, the Court must deny Defendants' special motion to strike because

10  plaintiff has shown a reasonable probability of prevailing on the merits of his first

11  cause of action.

12          **i.      Defendants have not submitted evidence establishing**

13                  **why plaintiff is not likely to prevail on his defamation cause**

14                  **of action.**

15  Plaintiff notes that although Defendants argue that plaintiff cannot prevail on

16  his defamation cause of action, Defendants' have not submitted sufficient evidence

17  to support their argument, nor have Defendants highlighted applicable law that

18  supports their contentions.  Defendants rely almost exclusively on Israel's

19  declaration to support their argument that the alleged defamatory statements are

20  true, but Israel's declaration does not address many of the alleged defamatory

21  statements.  Even if the Court concludes that every statement in Israel's declaration

22  is admissible, which is not the case, and even if the Court concludes that every

23  statement in Israel's declaration is true, which is contradicted by plaintiff's

24  declaration and additional evidence, Defendants still do not have evidence to explain

25  how many of the alleged defamatory statements are true.

26          For example, plaintiff has submitted evidence showing that Defendants

27  stated that "multiple people" have accused plaintiff of sexual abuse and that plaintiff

28

102542v2                                        18

1  is a "serial abuser" of women.  (Lunger Decl., Exh. A.)  Israel's declaration only

2  describes her personal, individual experience with plaintiff.  Therefore, even is

3  Israel's declaration is true and admissible, Defendants have not explained their

4  accusations that "multiple people" have accused plaintiff of sexual abuse and that

5  plaintiff is a "serial abuser" of women.  Defendants cannot establish that all of the

6  allegedly defamatory statements are true if they do not submit evidence supporting

7  the veracity of all of the statements.  Due to the presence of evidence submitted by

8  plaintiff and the absence of evidence submitted by Defendants, a reasonable trier of

9  fact would likely conclude that Defendants are guilty of defamation.

10       Defendants also argue that plaintiff cannot demonstrate that Defendants acted

11  with the requisite degree of actual malice in this case.  (Motion, p. 20.)  In order to

12  prove actual malice, plaintiff must show that Defendants published the alleged

13  defamatory statements with knowledge of their falsity or with reckless disregard of

14  their truth or falsity.  (*Rosenaur v. Scherer* (2001) 88 Cal. App. 4th 260, 272.)

15  Defendants contend that actual malice is required because plaintiff is a public figure

16  and Defendants' statements were fair comment on a public figure.  (*Id*. at pp. 20-

17  23.)  However, as discussed above, plaintiff does not need to show a degree of

18  actual malice because plaintiff is not a public figure.  Furthermore, plaintiff has

19  evidence to show actual malice if necessary.

20       Plaintiff has submitted evidence in the form of his declaration as well as

21  Israel's confessions to Jones and Bruce and an email written by Israel to plaintiff

22  showing that Israel knowingly lied about plaintiff.  By contrast, Israel's declaration

23  does not even address how or why she believed many of the accusations made

24  against plaintiff were true, such as the statements that plaintiff is a "serial abuser" of

25  women and that "multiple people" have accused plaintiff of sexual abuse.  Taken

26  together, plaintiff has submitted evidence that Defendants knew the alleged

27  defamatory statements were false and Defendants have not submitted evidence

28

1    concerning many of the alleged defamatory statements.  On the basis of such

2    evidence a trier of fact would likely conclude that Defendants made the alleged

3    defamatory statements with actual malice.

4        Lastly, Defendants argue that many of the statements alleged in plaintiff's

5    Complaint are constitutionally protected opinions and that such statements are not

6    defamatory.  (Memorandum, p. 23; *Savage v. Pacific Gas & Electric Co.* (1993) 21

7    Cal. App. 4th 434, 445.)  Defendants' argument fails for two reasons.  First,

8    Defendants do not even argue that all of the allegedly defamatory statements are

9    opinions, thereby conceding that their defense does not apply to some of the

10   statements alleged by plaintiff.

11       Second, many of the statements Defendants claim are opinions are not mere

12   opinions.  Defendants argue that in determining whether a statement is an opinion

13   courts must consider the nature of the language used and the "verifiability of the

14   statements."  (Memorandum, p. 23; *Moyer v. Amador Valley J. Union High Sch.*

15   *Dist*. (1990) 225 Cal. App. 3d 720, 725.)  Focusing on the concept of verifiability,

16   many of the allegedly defamatory statements are more readily classified as facts

17   than opinions.  Whether plaintiff sexually assaults women, whether plaintiff abused

18   Israel, and whether plaintiff nearly starved Israel to death are all bright line, factual

19   issues.  Either plaintiff did those things or he did not; they are not matters of

20   subjective opinion.

21       The foregoing examination of Defendants' arguments and evidence shows

22   that Defendants have not established that plaintiff does not have a reasonable

23   probability of success on the merits in this case.  Defendants do not even address

24   many of the allegations in plaintiff's Complaint and the evidence supporting those

25   allegations.  Furthermore, the arguments Defendants make are based on their

26   mistaken belief that plaintiff is a public figure and that the allegedly defamatory

27   statements are constitutionally protected opinions.  The Court should not be

28

1   persuaded by such deficient evidence and reasoning.

2       **3.**    **Plaintiff Has Submitted Evidence That, if Believed by a Trier**

3              **of Fact, Would Support a Judgment in Plaintiff's Favor on**

4              **his Intentional Infliction of Emotional Distress Cause of**

5              **Action.**

6         The elements of a cause of action for intentional infliction of emotional

7   distress are (1) outrageous conduct; (2) intent to cause or a reckless disregard to

8   cause emotional distress; (3) severe emotional distress; and (4) actual or proximate

9   cause of emotional distress by conduct of defendant. *Trerice v. Blue Cross of*

10  *California* (1989) 209 Cal. App. 3d 878, 883; *Kisesky v. Carpenters Trust for So.*

11  *Cal.* (1983) 144 Cal. App. 3d 222, 229.  Plaintiff has submitted evidence to satisfy

12  each of the foregoing elements.

13        To be considered outrageous, conduct "must be so extreme as to exceed all

14  bounds of that usually tolerated in a civilized society." (*Trerice*, supra 209 Cal.

15  App. 3d at 883.)  Two examples of such conduct include entering another person's

16  home without thought of the potential consequences or a reporter interviewing

17  children about a murder the occurred next door.  (*Miller v. National Broadcasting*

18  *Co.* (1986) 187 Cal. App. 3d 1463, 1487; *KOVR-TV v. Superior Court* (1995) 31

19  Cal. App. 4th 1023, 1030.)  In this case, the outrageous conduct at issue is

20  Defendants' accusing plaintiff of sexual assault and physical abuse to many people,

21  both in public and in private.

22        Plaintiff has explained in his declaration that the accusations made by

23  Defendants caused plaintiff severe emotional distress.  (Young Decl. ¶¶ 54-55.)  It is

24  also evident by Israel's stated intent to ruin plaintiff's reputation and the extent of

25  Defendants' campaign to defame plaintiff that Defendants intended to cause plaintiff

26  emotional distress or at the very least, recklessly disregarded the likelihood that their

27  conduct would case plaintiff emotional distress.  (Jones Decl. ¶¶ 2-3.)  Therefore,

28

1  plaintiff has submitted evidence establishing that he has a reasonable probability of

2  prevailing on his second cause of action.

3         Defendants make no discrete argument in their special motion to strike

4  regarding plaintiff's second cause of action.  Instead, Defendants rely solely on their

5  argument that plaintiff's defamation claim is insufficient.  Given that plaintiff has

6  submitted evidence showing a probability of prevailing on his second cause of

7  action and Defendants have submitted no evidence to the contrary, the Court should

8  conclude that plaintiff has met his burden with regard to plaintiff's second cause of

9  action.

10               **4.      Plaintiff Has Submitted Evidence That, if Believed by a Trier**

11                         **of Fact, Would Support a Judgment in Plaintiff's Favor on**

12                         **his False Light Cause of Action.**

13         "In order to be actionable, the false light in which the plaintiff is placed must

14  be highly offensive to a reasonable person.  Although it is not necessary that the

15  plaintiff be defamed, publicity placing one in a highly offensive false light will in

16  most cases be defamatory as well."  (*Fellows v. Nat'l Enquirer* (1986) 42 Cal. 3d

17  234, 238-39.)  This case falls under the circumstances described above.  The

18  evidence discussed in connection with plaintiff's defamation cause of action is

19  sufficient to show that plaintiff was placed in a false light by Defendants due to

20  Defendants' accusations that plaintiff has sexually assaulted and abused multiple

21  women and that plaintiff nearly starved a woman to death.  Such accusations are

22  highly offensive to a reasonable person.  Therefore, on the strength of the evidence

23  supporting plaintiff's defamation claim, plaintiff has also shown a probability of

24  prevailing on his false light cause of action.

25         Defendants have not presented evidence directed to plaintiff's false light

26  claim.  Instead, Defendants argue that plaintiff's claim should be stricken because it

27  is duplicative of the defamation claim.  First, Defendants' have cited no authority

28

requiring the Court to deem the false light claim duplicative.  Second, the *Fellows* case shows that the two torts are often viewed as distinct.  The Court accordingly should not be persuaded by Defendants' arguments.

## IV.   PLAINTIFF IS ENTITLED TO REASONABLE ATTORNEYS' FEES BECAUSE DEFENDANTS' MOTION IS FRIVOLOUS AND HAS BEEN BROUGHT SOLELY TO CAUSE UNNECESSARY DELAY

"If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5." (Code Civ. Proc. § 425.16 subd. (c)(1).)  "'Frivolous' means (A) totally and completely without merit or (B) for the sole purpose of harassing an opposing party."  (Code Civ. Proc. § 128.5 subd. (b)(2).)

In this case, Defendants' motion is completely without merit.  Defendants cannot prevail on either prong of the section 425.16 analysis.  First, Defendants cannot establish that the allegedly defamatory statements were made in furtherance of Defendants' right to petition or engage in free speech pursuant to section 425.16.  Section 425.16 was designed to permit speech that is necessary for the functioning of our legal system, political system, and the free press.  Section 425.16 was not intended to provide a safe harbor for personal, pointed accusations against a private citizen and Defendants' attempt to take advantage of section 425.16 is frivolous.

Second, plaintiff has sufficient evidence to establish a likelihood of prevailing on the merits of each cause of action in the Complaint.  Taken together, the foregoing conclusions show that Defendants' motion is totally devoid of merit and that the motion was brought as a tactical instrument, rather than as a legitimate challenge to plaintiff's Complaint.  Therefore, plaintiff is entitled to reasonable attorneys' fees and costs pursuant to section 425.16(c)(1).)  The precise amount of fees sought will be explained in a subsequently noticed motion.

**V.    CONCLUSION**

In light of the foregoing arguments, plaintiff respectfully requests that the Court deny Defendants' special motion to strike.  Plaintiff also respectfully requests that the Court order Defendants to pay plaintiff's attorneys' fees and costs, to be determined at a later date.

Respectfully Submitted,

Dated:  May 30, 2011              /s/ Jill L. Ryther

                          By:  _____

                              Jill L. Ryther
                              Attorney for Plaintiff,
                              PETER YOUNG

1

## <u>CERTIFICATION OF SERVICE</u>

2   I hereby certify that on May 30, 2011, I electronically filed the foregoing with the

3   Clerk of the Court by using the CM/ECF system.

4                                         Respectfully Submitted,

5

6                                         /s/ *Jill L. Ryther*

7                                         Jill L. Ryther

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

102542v2